# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## 3:17-cv-93-RJC
## (3:14-cr-147-RJC-1)

| | | |
|---|---|---|
| **RODERICK LAUADES BROWN,**[1] | ) | |
| | ) | |
| **Petitioner,** | ) | |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | |
| | ) | |
| **Respondent.** | ) | |
| | ) | |

**THIS MATTER** is before the Court upon Petitioner Roderick Lauades Brown's pro se Motion to Vacate, Set Aside or Correct Sentence under 28 U.S.C. § 2255. (Doc. No. 1).

## I.      BACKGROUND

From 1998 through at least November 2007, Brown participated in a drug-trafficking conspiracy in Iredell County, North Carolina. Indict., United States v. Brown, No. 5:07-cr-00050-FDW-1 (W.D.N.C.), Doc. No. 3. Brown was charged in both a December 18, 2007 indictment and a February 26, 2008 superseding indictment with conspiracy to possess with intent to distribute a quantity of cocaine & cocaine base, Sch. II controlled substances, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846, (Count One). Id.; Superseding Indict., id. at Doc. No. 78. The conspiracy was alleged to have involved at least 50 grams of a mixture and substance containing detectable amounts of cocaine base and at least 5 kilograms of a mixture and substance containing detectable amounts of cocaine. Id. The indictments also charged Brown with possessing with intent to distribute a quantity of cocaine base, a Sch. II controlled

---

[1] In several transcripts, Brown states that his middle name is spelled "Lavades." However, Brown's middle name is spelled "Lauades" in his Bureau of Prisons' records. See Fed. Bureau of Prisons Inmate Locater, https://www.bop.gov/inmateloc/ (last viewed Nov. 5, 2018). To avoid any confusion within the prison system, the Court uses the Bureau of Prisons' spelling.

substance, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (Count Two). Id. That alleged offense occurred on or about November 5, 2007 and involved at least 5 grams of a mixture and substance containing detectable amounts of cocaine base. Id. The Government filed a notice of enhanced penalty under 21 U.S.C. § 851, based on Brown's prior 1999 state conviction for drug trafficking. Sect. 851 Notice, id. at Doc. No. 5. A warrant for Brown's arrest was issued on December 18, 2007, Warrant, id. at Doc. No. 4, but he was not arrested until November 5, 2012. Law enforcement officers discovered the outstanding 2007 warrant after initiating a traffic stop of Brown in connection with a separate drug trafficking investigation that ultimately led to the charges at issue in the instant Motion to Vacate.

Subsequent to his arrest on the 2007 warrant, Brown was charged in a one-count Bill of Information filed on April 16, 2013, charging him with possessing with intent to distribute an unspecified quantity of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B), on or about November 5, 2007. Info., United States v. Brown, No. 5:13-cr-00024-RLV-1 (W.D.N.C.), Doc. No. 1. Brown waived indictment, id. at Doc. No. 4, signed a Plea Agreement, id. at Doc. No. 2, and entered a guilty plea, Accept. and Entry of Plea, id. at Doc. No. 5, in Case No. 5:13-cr-00024-RLV-1. In turn, the Government agreed to dismiss the § 851 Information filed in Case No. 5:07-cr-00050. Plea Agree. at ¶ 1, Brown, No. 5:13-cr-00024-RLV-1, Doc. No. 2. This Court thereafter granted a motion by the Government to dismiss, without prejudice, the February 26, 2008 superseding indictment against Brown in Case No. 5:07-cr-00050. See Brown, No. 5:07-cr-00050-RLV-1, Doc. Nos. 568, 569.

On February 5, 2014, the Court sentenced Brown to 26 months of imprisonment, plus three years of supervised release. J., Brown, No. 5:13-cr-00024-RLV-1, Doc. No. 12. The Court entered judgment on February 10, 2014, id., and Brown did not appeal.

While incarcerated on that conviction, Brown was charged in a September 17, 2014

superseding indictment with conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(b)(1)(A) and 846 (Count One); money laundering conspiracy, in violation of 18 U.S.C. §1956(h) (Count Two); distribution of, and possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(A) and 18:2 (Count Three); possession with intent to distribute methylenedioxymethamphetamine, in violation of 21 U.S.C. §§ 841(a), 841(b)(1)(3) and 18:2 (Count Four); firearm possession in furtherance of drug trafficking, in violation of 18 U.S.C. §§ 924(c) and 18:2 (Count Five); and possession of a firearm by a convicted felon, in violation 18 U.S.C. § 18:922(g)(1) (Count Six). Indict., Superseding Indict., United States v. Brown, No. 3:14-cr-00147-RJC-1 (W.D.N.C.), Doc. Nos. 1, 10. The charges covered conduct alleged to have occurred from in or about 2011 to in or about 2012, in Mecklenburg County and Union County. Id. The Government filed a notice of enhanced penalty under 21 U.S.C. § 851, based on Brown's prior 1999 state conviction for drug trafficking and his 2014 conviction for possession with intent to distribute (hereinafter "2007 offense"). Sect. 851 Notice, id. at Doc. No. 7.[2]

On November 18, 2014, Brown signed a plea agreement with the Government, id. at Doc. No. 17, and he entered a guilty plea to Counts One and Two of the superseding indictment the next day, id. at Doc. No. 18. Pursuant to the plea agreement, the Government agreed to withdraw the § 851 enhancement, which would reduce Brown's mandatory minimum sentence from 20 years to ten years, if he complied with every provision of the plea agreement. Plea Agrmt. ¶ 4, id. at Doc. No. 17. The parties agreed to recommend to the Court that Brown was responsible for at least fifteen kilograms but less than 50 kilograms of cocaine, that he should receive a two-level minor role adjustment for Count One; that he should receive a two-level

---

[2] The Government later withdrew the portion of the information seeking enhanced penalties based upon Brown's conviction for the November 5, 2007 offense. United States v. Brown, No. 3:14-cr-00147-RJC-1, Doc. No. 25.

weapon enhancement under U.S.S.G. § 2D1.1(b)(1), and that his plea was timely for purposes of acceptance of responsibility.  Id. at ¶ 7.  Brown stipulated to the factual basis, but he reserved the right to object to whether he delivered the five kilograms of cocaine that was seized from co-conspirator Corey Herron on June 1, 2012, as well as to whether a house searched on November 2, 2012, was his residence.  Id. at ¶ 14.  He also waived the right to withdraw his guilty plea once the magistrate judge accepted it and the right to challenge his conviction or sentence on appeal or in any post-conviction proceeding, except as to issues of ineffective assistance of counsel or prosecutorial misconduct.  Id. at ¶¶ 15, 18-19.

A probation officer prepared a presentence investigation report ("PSR"), calculating that Brown had a base offense level of 32, plus a two-level increase for money laundering, for a total offense level of 34.  PSR at ¶¶ 31-32, 36, Brown, 3:14-cr-00147-RJC-1, Doc. No. 33 (sealed).  The probation officer did not recommend an adjustment for acceptance of responsibility because Brown did not complete the acceptance of responsibility form.  PSR, id. at ¶ 21.  Brown had six criminal history points, which placed him in criminal history category III.  Id. at ¶ 54.  Due to the 20-year statutory minimum in Count One, with the § 851 enhancement, the guidelines range became 240 months.  Id. at ¶ 78.  Brown's attorney filed objections to the PSR, arguing, *inter alia*, that he should receive an adjustment for acceptance of responsibility and an adjustment for having a minor role in the money laundering offense.  Object. to PSR, id. at Doc. No. 28.

After the final PSR was issued, and after four inquiry of counsel hearings during which Brown stated that he was attempting to retain new counsel, see id. at Doc. Nos. 66-69, Brown was granted leave to represent himself, and appointed counsel, Federal Defender John Parke Davis, was directed to act as standby counsel, see id. at Doc. No. 69.  Thereafter, Brown filed several pro se motions, which were denied.  Davis filed a motion to withdraw as attorney and to appoint new standby counsel, see id. at Doc. No. 46, which was granted by oral order.

Attorney Chiege O. Kalu Okwara was appointed as standby counsel. She filed supplemental objections to the PSR on Brown's behalf, again arguing he should receive an adjustment for acceptance of responsibility and arguing that he should not receive any criminal history points for his prior federal drug conviction because it involved related conduct. Suppl. Object. to PSR, <u>Brown</u>, 3:14-cr-00147-RJC-1, Doc. No. 53.

Brown's sentencing hearing was held on February 12, 2016, at which Okwara was appointed as counsel of record and no longer acted as standby counsel. Brown stipulated to the factual basis for his plea. Sent. Tr. at 3, <u>id.</u> at Doc. No. 70. The parties informed the Court that they had agreed Brown should receive a minor role adjustment for the money laundering count, that he should receive credit for acceptance of responsibility, and that a 120-month sentence was appropriate. The Government withdrew the § 851 enhancement. <u>Id.</u> at 4-5.

During Brown's allocution, he requested that the prison time imposed in his prior federal sentence be counted toward the time imposed in his new sentence. <u>Id.</u> at 14. The Court found that based on the parties' agreement, the appropriate guidelines range was 120 to 135 months of imprisonment; it declined to run Brown's sentence concurrently with his prior federal sentence, citing Brown's "very serious criminal conduct" and the "very generous sentencing reduction" in his prior case; and it sentenced Brown to a consecutive term of 120 months of imprisonment. <u>Id.</u> at 5-6, 14-15. Judgment was entered on March 3, 2016. J, <u>id.</u> at Doc. No. 56.

Brown appealed. His attorney filed a brief pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that there were no meritorious issues for appeal, but questioning whether the district court should have granted Brown's pro se motion to dismiss his indictment due to unjustifiable delay. <u>United States v. Brown</u>, 661 F. App'x 793, 793 (4th Cir. 2016). The Fourth Circuit affirmed, finding that Brown had not shown actual prejudice. <u>Id.</u> at 794. Because the Government did not raise Brown's waiver of his appellate rights as a defense, the court also

addressed the issues raised in Brown's pro se supplemental brief, holding that his guilty plea hearing had complied with Federal Rule of Civil Procedure 11, that his sentence was not unreasonable or erroneous, and that an examination of the record had revealed no meritorious issues for appeal.  Id.

Brown timely filed the instant Motion to Vacate on February 17, 2017, see Houston v. Lack, 487 U.S. 266, 267 (1988), challenging the judgment entered relative to the 2012 offenses. He raises four claims of ineffective assistance of counsel.  The Government has filed a Response opposing the Motion to Vacate (Doc. No. 6), and Brown has filed a Reply (Doc. No. 8) and a Motion for Leave to File Supplemental Authority (Doc. No. 9).

## II.    STANDARD OF REVIEW

Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Court provides that courts are to examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . ." in order to determine whether the petitioner is entitled to any relief on the claims set forth therein.  After examining the record in this matter, the Court finds that the arguments presented by Brown can be resolved without an evidentiary hearing based on the record and governing case law.  See Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970).

## III.    DISCUSSION

The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the accused has the right to the assistance of counsel for his defense.  U.S. CONST. amend. VI.  To show ineffective assistance of counsel, Brown must first establish a deficient performance by counsel and, second, that the deficient performance prejudiced him.  See Strickland v. Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable

professional assistance." Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010). To establish prejudice, a petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993)). Under these circumstances, the petitioner "bears the burden of affirmatively proving prejudice." Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008). If the petitioner fails to meet this burden, a "reviewing court need not even consider the performance prong." United States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d 310 (4th Cir. 2000).

### A. Ineffective Assistance of Trial Counsel for Failing to Investigate and to Challenge the Indictment

Brown claims plea counsel, Davis, performed deficiently by failing to investigate his allegations that co-conspirator Gregory Martin a.k.a. "Buck" "paid $50,000 to an informant for immunized information with the explicit intent to use it in exchange for favoritism by the government" to determine "who else was exposed to the tainted information and when they were exposed to it." (§ 2255 Mot. 15, Doc. No. 1). He also claims Davis was ineffective for refusing to move to dismiss the superseding indictment based upon Brown's allegations about Martin and other co-conspirators. Brown argues that had counsel moved to dismiss the indictment, it "may have led to the rejection of [illegally obtained] statements," and "it is reasonable to assume that the outcome would have been different." (§ 2255 Mot. 16).

"When a defendant pleads guilty, he waives all nonjurisdictional defects in the

proceedings conducted prior to the plea." United States v. Moussaoui, 591 F.3d 263, 279 (4th Cir. 2010). Pre-plea ineffective assistance of counsel about a matter that does not affect the voluntariness of the decision to plead guilty is such a non-jurisdictional defect. United States v. Torres, 129 F.3d 710, 715 (2d Cir. 1997); Wilson v. United States, 962 F.2d 996, 997 (11th Cir. 1992); Smith v. Estelle, 711 F.2d 677, 682 (5th Cir. 1983); accord Moussaoui, 591 F.3d at 279 (holding that arguments alleging pre-plea Sixth Amendment violations were "not cognizable" because the defendant's guilty plea had waived them); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1296 (4th Cir. 1992) (holding that a guilty plea waived a claim of the denial of constitutionally required counsel "that occurred prior to" the guilty plea and was "unrelated to it"). A guilty plea is valid when it "represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." Burket v. Angelone, 208 F.3d 172, 190 (4th Cir. 2000) (citing North Carolina v. Alford, 400 U.S. 25, 31 (1970)).

Brown contends that his guilty plea was involuntary because Davis erroneously advised him that he could still challenge the offense conduct alleged in the indictment even if he pleaded guilty. (§ 2255 Mot. 16-17). Brown argues his allegations against Martin are related to his claim regarding the voluntariness of his plea because he wanted to challenge Martin's statements to law enforcement prior to the plea. (Reply 1, Doc. No. 8). Out of caution, the Court will address the substance of these claims.

To support an ineffective assistance claim based on the failure to investigate, a petitioner must present specific information to show what favorable evidence the investigation would have produced. See Beaver v. Thompson, 93 F.3d 1186, 1195 (4th Cir. 1996). If there is "no reasonable probability that a possible defense would have succeeded at trial," counsel's failure to investigate the defense is not prejudicial. See Savino v. Murray, 82 F.3d 593, 599 (4th Cir. 1996).

According to the PSR's summary of the offense conduct supporting Brown's indictment, during an investigation of a drug-smuggling/trafficking organization led by a "Guyanan National,"[3] that had access to firearms and received kilogram quantities of cocaine from a "Hispanic organization," law enforcement officials debriefed at least five cooperating co-conspirators who implicated Brown in the cocaine trafficking and related money laundering conspiracy. PSR ¶¶ 7, 11, Brown, No. 3:14-cr-00147-RJC-1, Doc. No. 33 (sealed). According to the co-conspirators, one of whom was Martin, cocaine purchases were conducted by and through Martin, who used Brown to deliver the cocaine to his buyers and to collect payment from them. Id. at ¶¶ 12-17. The co-conspirators acknowledged making multiple purchases of various amounts of cocaine from Martin, ranging from ounces to kilograms, and alleged Brown delivered the cocaine to them at different locations in Charlotte. Id. In addition, on November 2, 2012, law enforcement conducted a search of a Union County residence and seized approximately 700 doses of MDMA (Ecstasy), marijuana, used cocaine wrappers, approximately $3,000 in U.S. currency, a cocaine press, and a stolen firearm. Factual Basis ¶ 5, id. at Doc. No. 16. Brown was the leaseholder of the residence. Obj. to Draft PSR ¶ 3, id. at Doc. No. 28.

In a 2017 affidavit attached to the Motion to Vacate, Brown alleges:

1. Sometime after Brown's arrest in November, 2012, Gregory Martin "Buck" contacted Brown's family and disclosed that he had been contacted by a federal agent. He was told that Corey Herron, Tony Torres, Brian Clinton and others had wrote statements, [sic] He was told that Brown had not wrote a statement and that the [sic] know that Brown did not deliver any cocaine to Corey, but wanted to use Brown as a witness against him. He also was told that Brown's attorney had scheduled a meeting with the United States Attorney and federal authorities and that as long as Brown did not say anything and he provided a cash payment of $50,000 he would not be indicted.

---

[3] The investigation was conducted by the Department of Homeland Security, the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and the Charlotte-Mecklenburg Police Department, among others. PSR ¶ 11, Brown, No. 3:14-cr-00147-RJC-1, Doc. No. 33. The "Guyanan National" was Gregory Martin (a/k/a Loris Gemon a/k/a "Buck"). PSR 3, United States v. Gemon, No. 3:14-cr-00140-RJC-1 (W.D.N.C.), Doc. No. 109 (sealed).

2.  This payment was provided a breakdown as follows:  $20,000 for Martin, $15,000 for Ian Nichols, and $15,000 for Brown not to be indicted and the due date was set for January 1, 2013.  Other information was also given like who Brown had called form [sic] the county jail and when he called them, the identity of other people currently working with law enforcement, not yet arrested, and information regarding how Brown's attorney was handling the case.

(Brown Feb. 16, 2017 Aff. ¶¶ 1-2, Doc. No. 1 at 31) (spelling and punctuation errors in the

original).[4]  Brown alleges that Martin paid $50,000 to the purported federal agent for

"immunized information" that was later used against Brown and that Martin paid the $50,000 to

insure he (Martin) would not be indicted.  Brown also contends the drug amount alleged in his

indictment was based solely on Martin's statements "that should have been rejected as tainted."

(Brown Feb. 16, 2017 Aff. ¶ 10, Doc. No. 1 at 32).  Construed liberally, Brown appears to be

asserting that Martin's inculpatory statements to law enforcement were based upon information

he purchased from a federal agent.

Brown has not produced any evidence that Davis did not investigate these allegations.

He also has not presented specific information to show what favorable evidence such an

investigation would have produced.  See Beaver, 93 F.3d at 1195.

As an initial matter, Brown's allegations against Martin are based entirely on hearsay –

i.e. Martin allegedly shared statements allegedly made by an unidentified federal agent with one

or more unidentified members of Brown's family, who shared those statements with Brown.

Second, the information purportedly passed on by Martin to Brown's family alleges extortion on

the part of a federal agent; it does not even hint that Martin purchased information from the agent

or that the agent was in any way acting as an informant for Martin.  Instead, the information

indicates Martin was to pay the agent a bribe to keep himself, another unindicted co-conspirator,

---

[4] The incidents alleged in Brown's 2017 affidavit occurred while Brown was awaiting trial on the 2007 offense, Brown, No. 5:07-cr-00050-FDW-1.  Davis did not represent him in those proceedings.

Ian Nichols, and Brown from being indicted.

Next, Brown does not explain what he means by "immunized information," identify the "immunized information" Martin allegedly purchased, or state how it was used against him (Brown). In his affidavit, Brown asserts that a defendant in an unrelated financial crimes case told Brown he had seen statements made by Corey Herron and Tony Torres and had discussed those statements with at least two other individuals who were named in the statements (Brown Feb. 16, 2017 Aff. ¶ 10, Doc. No. 1 at 32), but it is not clear whether this allegation is related to his allegation that Martin purchased "immunized information." As noted, Brown does not identify the nature of the "immunized information" Martin allegedly purchased. Assuming the allegations are related, they rely solely on hearsay, and Brown does not identify who purportedly showed the other inmate Herron's and Torres's statements, when and to whom the statements were made, when the other inmate saw the statements, or who else was named in the statements.[5] Nor does he point to any evidence prosecutors offered Herron and Torres immunity for their statements or to any evidence tying Martin to the purchase or exposure of the statements, immunized or otherwise.

In an unsuccessful effort to clarify this claim, Brown, in his Reply to the Government's Response, states:

> What . . . Brown is contending is that not only defense counsel but the government as well had an obligation to investigate the fact that Martin had paid $50,000 for immunized information with the explicit intent to use it in exchange for favoritism by the government and to find out who else was exposed to this information and when they were exposed to it since no other evidence exist independent from the

---

[5] In the Motion to Vacate, Brown also states, "[w]hen the defendant's family provided statements from an unrelated case to counsel, that were sold to an individual who was being investigated in order to help counsel further the investigation, counsel failed to pursue the investigation even after the assigned investigator stated 'it would be interesting to find out how those statements were disclosed' (see exhibit A1)." (§ 2255 Mot. 16, Doc. No. 1). Brown, however, does not explain how statements allegedly purchased in an unrelated and unidentified case are relevant to his case. In addition, Brown's Exhibit A1 consists of an email exchange that does not contain the observation allegedly made by the unidentified assigned investigator and three pages of unreadable, unidentified photocopied text. (§ 2255 Mot. Ex. A1, Doc. No. 1 at 20-24).

tainted testimony. see note: 'The government may also violate the fifth amendment when a cooperating witness's exposure to compelled testimony motivates that witness to cooperate and testify against the defendant. <u>United States v. Biaggi</u>, 909 F.2d 662, 689-690 (2nd Cir. 1990).

(Pet'r's Reply 1, Doc. No. 8). To the extent Brown is alleging Martin purchased immunized testimony, he does not identify whose immunized testimony Martin purchased, what the testimony was, how it was tainted, or when it was given.

Finally, contrary to Brown's assertion, other cooperating witnesses, not just Martin, attributed drug amounts in excess of five kilograms to Brown. PSR ¶¶ 12-15, <u>Brown</u>, No. 3:14-cr-00147-RJC-1, Doc. No. 33 (sealed). <u>See id.</u> at ¶ 16. In sum, Brown has made a series of conclusory allegations, which themselves are hard to follow, but has produced no reliable evidence to back them up.[6]

As for Brown's claim that Davis was ineffective for failing to move to dismiss the indictment based on these allegations, he has failed to demonstrate a reasonable probability that such a motion would have been granted. In reviewing a motion to dismiss an indictment, the court tests the indictment "by its sufficiency to charge an offense." <u>United States v. Sampson</u>, 371 U.S. 75, 78-79 (1962). "It is perfectly proper, and in fact mandated, that [a] district court dismiss an indictment if the indictment fails to allege facts which constitute a prosecutable offense." <u>United States v. Cola</u>, 719 F.2d 1120, 1123 (11th Cir. 1983). The Fourth Circuit has articulated the standards for the sufficiency of an indictment, stating:

---

[6] The Court notes that Martin was indicted on July 17, 2014, on one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i), 1956(a)(1)(B) and 1956(h), in connection with the same conspiracies involving Brown. Indict., <u>Gemon</u>, No. 3:14-cr-00140-RJC-1, Doc. No. 40. Martin pled guilty to both charges on August 18, 2015, <u>id.</u> at Doc. No. 93, and was sentenced to concurrent 216-month terms of imprisonment, <u>id.</u> at Doc. No. 126. Ian Nichols pled guilty on July 1, 2014, to one count of conspiracy to possess with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A) and 846, and one count of conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), in connection with the same conspiracies involving Brown and Martin. Accept. and Entry of Guilty Plea, <u>United States v. Nichols</u>, No. 3:14-cr-00130-RJC-2 (W.D.N.C.), Doc. No. 36. He was sentenced to concurrent 90-month terms of imprisonment. J., <u>id.</u> at Doc. No. 48.

> [A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense. Usually an indictment is sufficient if it alleges an offense in the words of the statute, as long as the words used in the indictment fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence. However, simply parroting the language of the statute in the indictment is insufficient. When the words of a statute are used to describe the offense generally, they must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged. Thus, the indictment must also contain a statement of the *essential facts* constituting the offense charged.

United States v. Brandon, 298 F.3d 307, 310 (4th Cir. 2002) (citations and internal quotations omitted; alteration and emphasis in Brandon). If the indictment meets these standards, it "is valid on its face" and the court may not "review the sufficiency of evidence supporting" the indictment because a valid "indictment returned by a legally constituted and unbiased grand jury" is "enough to call for trial of the charges on the merits." United States v. Wills, 346 F.3d 476, 488-89 (4th Cir. 2003). Brown has not identified how the indictment in his case was insufficient to charge the offenses listed therein.

For the reasons stated, Brown has shown neither deficient representation on Davis's part nor prejudice. See Strickland, 466 U.S. at 694. Therefore, this Claim is denied. See United States v. Dyess, 730 F.3d 354, 359-60 (4th Cir. 2013) (holding it was proper to dismiss § 2255 claims based on vague and conclusory allegations).

### B. Ineffective Assistance of Trial Counsel with Respect to Guilty Plea

Brown asserts that his guilty plea was involuntary because Davis erroneously advised him that he could still challenge the offense conduct alleged in the indictment even if he pleaded guilty.[7] (§ 2255 Mot. 16-17). He also asserts that counsel did not go over the entire plea

---

[7] The Motion to Vacate does not allege Brown sought to challenge any of the offense conduct related to the money laundering charge.

agreement with him and explain each provision in detail. (§ 2255 Mot. 17).

According to the Motion to Vacate,

> Counsel was repeatedly asked by defendant about challenging the offense conduct that was outlined in the indictment. Defendant repeatedly maintained his innocence of the June 1, 2012; as well as the November 2, 2012, conduct. In the discovery material provided to defense counsel, there was a statement provided by Corey Herron that alleged that defendant had delivered to him 5 kilograms of cocaine on behalf of a source whom he routinely worked. Defendant advised counsel that this was not a true statement. In addition to defendant already wanting to challenge the statements that Buck had made, due to the tainted information he received by paying $50,000 to an informant, Buck also stated that 'the drugs Corey possessed did not come from him'. It was also discovered in the discovery that Corey had made two prior statements about the offense and each time he named a different source for who the drugs came from, while not mentioning the defendant.

(§ 2255 Mot. 16). Also, according to the Motion, Davis initially informed Brown that he would challenge the offense conduct alleged in the indictment, but later stated he could not proceed to trial because he did not have a defense. Brown then requested that Davis file a motion to dismiss the indictment and include an affidavit Brown had prepared, and counsel refused. Later, Davis presented him with a plea agreement, which Brown refused to sign "because nothing was challenged." Davis returned with another attorney and "reemphasized that he could not win at trial and that the potential punishment would be 27 years imprisonment." Brown inquired about the offense conduct alleged in the indictment that he wanted to challenge and was told that it could still be challenged even after the guilty plea. (§ 2255 Mot. 16).

As part of the plea agreement, Brown stipulated to the factual basis for Counts One and Two, but he reserved the right to object to the allegation that he delivered the five kilograms of cocaine seized from Corey Herron on June 1, 2012, and to the allegations that the house searched on November 2, 2012, was his residence and that he was living there at the time of the search. Plea Agree. at ¶ 14, Brown, 3:14-cr-00147-RJC-1, Doc. No. 17; Factual Basis at n.1-2, id. at Doc. No. 16; Draft PSR at ¶¶ 9-10, id. at Doc. No. 24. After the plea was entered and a draft

PSR was filed, Davis challenged those and other portions of the offense conduct in objections he filed to the PSR on Brown's behalf.  Def.'s Object. to PSR., id. at Doc. No. 28.  In other words, consistent with his assurances to Brown, after the guilty plea was entered, counsel challenged the portions of the 2012 offense conduct alleged in the indictment to which Brown had reserved the right to object.

Furthermore, during his plea hearing, Brown affirmed that he understood the charges against him and the minimum and maximum penalties.  Plea Hr'g Tr. at 5, Brown, 3:14-cr-00147-RJC-1, Doc. No. 65.  He affirmed he was, in fact, guilty of the conduct alleged in Counts One and Two.  Id. at 8.  He affirmed that he understood and agreed to the terms of the plea agreement.  Id. at 12; see also id. at 16 (statement by counsel that he reviewed each term of the plea agreement with Brown and was satisfied that Brown understood the terms).  He also affirmed that he understood the waiver provisions of the plea agreement, specifically that he waived his right to appeal his conviction and sentence and his right to challenge his judgment in a post-conviction habeas proceeding, except with respect to claims of government misconduct or ineffective assistance of counsel.  Id. at 12-14.

A petitioner is generally bound by the statements made during his Rule 11 colloquy, which are strong evidence of the voluntariness of his plea.  See United States v. DeFusco, 949 F.2d 114, 119 (4th Cir. 1991).  Statements made by a defendant under oath at a plea hearing carry a "strong presumption of verity" and present a "formidable barrier" to subsequent collateral attacks.  Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  Indeed, "in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should dismiss . . . any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."  United States v. Lemaster, 403 F.3d 216, 221-22 (4th Cir. 2005).  Here, Brown's allegations regarding the

voluntariness of his plea contradict the sworn statements he made during his plea colloquy.

Brown contends, however, that the transcript of the plea hearing does not accurately reflect all the statements and answers he made but shows he was confused about the question regarding waiver of appellate rights. The transcript of the plea agreement shows that when the magistrate judge asked during the Rule 11 hearing whether Brown's right to challenge his conviction and sentence in a post-conviction proceeding had been waived in the plea agreement, Brown responded that it had not been waived. Rule 11 Hr'g Tr. 13, <u>Brown</u>, No. 3:14-cr-00147-RJC, Doc. No. 65. The judge then held the plea open while Brown and Davis had an off-the-record discussion. <u>Id.</u> Brown subsequently told the judge, "Okay. I misunderstand. Let's go." <u>Id.</u> The judge offered him more time to talk the matter over with Davis, and Brown declined, again stating, "I misunderstood that -- what -- I'm ready." <u>Id.</u> at 14. The judge asked again if the right to challenge the conviction and sentence in a post-conviction proceeding had been waived in the plea agreement, and Brown responded, "Yeah." <u>Id.</u> In short, although the transcript indicates an initial misunderstanding of the post-conviction rights waiver, it also indicates Brown's discussion with Davis clarified whatever he had misunderstood, and he proceeded with the plea.

The only allegation Brown makes with respect to his and Davis's off-the-record conversation is that Davis told him for the second time that he still would be able to challenge the offense conduct after the guilty plea was entered.[8] Brown alleges that, but for this advice, he would not have taken the plea. (§ 2255 Mot. 16, 17). As noted previously, in his objections to the PSR, Davis challenged the offense conduct alleged in the indictment to which Brown specifically reserved the right to object, as well as other offense conduct cited by the probation

---

[8] Brown does not assert Davis advised him he could challenge the offense conduct alleged in the indictment on direct appeal or in a post-conviction action notwithstanding the waivers in the plea agreement.

officer. Def.'s Object. to PSR., <u>Brown</u>, No. 3:14-cr-00147-RJC, Doc. No. 28.

Nevertheless, Brown continues to insist that Davis's advice was erroneous. As evidence, he points to the trial court's denial of his pro se motion to dismiss the indictment. (Brown Aff., Doc. No. 1-1 at 32 ("I would not have made a fool of myself filing a motion to dismiss the bill of indictment if I had not been told that I could still challenge the [offense] conduct by my attorney.")).

As an initial matter, Brown did not directly challenge his offense conduct in his pro se motion to dismiss the indictment. Mot. to Dismiss Indict., <u>Brown</u>, <u>id.</u> at Doc. No. 36. Brown's motion, filed after the probation officer issued his final PSR, claimed unnecessary pre-indictment delay, double jeopardy, prosecutorial vindictiveness, and lack of subject matter jurisdiction as grounds for dismissal of the indictment. <u>Id.</u> In support of his prosecutorial vindictiveness claim, Brown alleged Corey Herron gave multiple conflicting statements to law enforcement about who was involved in the June 1, 2012 offense, Martin told law enforcement that Brown did not deliver drugs to Herron, and Brown had valid, non-criminal reasons for being at the residence searched on November 2, 2012. <u>Id.</u> at 9-11. The Court denied the motion to dismiss, holding that except for jurisdiction, Brown waived his right to challenge alleged defects in the indictment when he entered his knowing and voluntary plea. Order Den. Mot. to Dismiss Indict. 2-3, <u>id.</u> at Doc. No. 54 (citing <u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973) ("When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.")).

As explained in the previous section of this Order, had Brown moved to have his indictment dismissed *prior* to his plea because the evidence of his involvement in the June 1, 2012 offense and November 2, 2012 offenses was insufficient, contradictory, exculpatory,

tainted, and/or false would have been unsuccessful.  See discussion, supra, at III A.  In other

words, Brown's plea was not determinative of whether he could launch a successful attack on his

indictment based on the quantity or quality of the evidence against him, and Brown does not

allege Davis told him anything to the contrary.  Indeed, according to the Motion to Vacate, prior

to any plea discussions, Davis refused to move to dismiss the indictment on the grounds Herron

gave multiple inconsistent statements to law enforcement about the June 1, 2012 offense and

Martin's statements to law enforcement were tainted by his $50,000 purchase of "immunized

information" from an informant.  (§ 2255 Mot. 15, 16).

Ultimately, however, Brown has not demonstrated he was prejudiced by Davis's advice.

To establish prejudice in the context of a guilty plea, a petitioner must show that "'there is a

reasonable probability that, but for counsel's errors, [the defendant] would not have pleaded

guilty and would have insisted on going to trial.'"  Meyer v. Branker, 506 F.3d 358, 369 (4th Cir.

2007) (quoting Hill v. Lockhart, 474 U.S. 52, 59 (1985)).  The petitioner's "subjective

preferences" are not dispositive, but rather the test is "whether proceeding to trial would have

been objectively reasonable in light of all of the facts," United States v. Fugit, 703 F.3d 248, 260

(4th Cir. 2012), and whether the petitioner has shown that there is "contemporaneous evidence"

supporting his expressed preferences, Lee v. United States, 137 S. Ct. 1958, 1967 (2017).

Although Brown asserts that but for counsel's advice regarding the offense conduct he

would not have taken the plea, he never asserts that he would have proceeded to trial.  The

Government notes this fact in its Response (Resp. 10, Doc. No. 6), and Brown makes no effort to

refute it in his Reply (Reply 1, Doc. No. 8).  Instead, he contends he sought to challenge the

offense conduct prior to the plea,

> to avoid a mandatory minimum, not to simply contest it and gain nothing which
> was the result.  PSR Addnm. 21.  Prejudice is shown because the benefits of the
> plea are minuscule once it is taken in account that the government could not prove

a drug amount needed to warrant a mandatory minimum without the tainted testimony.

(Reply 1).

To recap, Brown pled guilty to conspiracy to possess with intent to distribute at least five (5) kilograms of cocaine (Count One).  Because of the § 851 Information filed by the Government, Brown was facing a mandatory minimum of 20 years in prison under § 841(b)(1)(A) (providing for a mandatory minimum sentence of 20 years and a maximum of life in prison for an offense involving five or more kilos of cocaine when the offender has a prior conviction for a felony drug offense).  The maximum term of imprisonment for the money laundering offense (Count Two) was 20 years.  See 18 U.S.C. § 1956(h).  As part of the plea agreement, however, the Government agreed to withdraw the § 851 Information, so Brown faced a mandatory minimum of 10 years in prison, and to dismiss the other four charges against him.

Had Brown rejected the plea, proceeded to trial and been found guilty of Count One alone, he would have been subject to a minimum of 20 years in prison, see § 841(b)(1)(A), as none of the concessions the Government made in exchange for his guilty plea would have been available to him.  Furthermore, he would have been tried on four additional charges, including two gun-related offenses (Counts Five & Six), which carried a mandatory consecutive sentence of at least five years in prison, see 18 U.S.C. §§ 922(g)(1) & 924(c).  Thus, Brown's contention that the benefits of the plea were miniscule is patently frivolous.

Next, as indicated previously, the basis for Brown's assertions that the Government could not prove a drug amount needed to warrant a mandatory minimum is unclear.  According to the Motion to Vacate, Brown repeatedly asked Davis "about challenging the offense conduct that was outlined in the indictment . . . [and] maintained his innocence of the June 1, 2012; [sic] as well as the November 2, 2012, conduct."  (§ 2255 16).  The only specific offense conduct

19

referenced in the indictment is that related to the June 1, 2012 and November 2, 2012 incidences. Superseding Indict. Counts Three - Six, <u>Brown</u>, No. 3:14-cr-00147-RJC, Doc. No. 10. The June 1, 2012 offense involved Corey Herron from whom law enforcement seized five kilograms of cocaine and $1,500.00 in currency. PSR ¶ 12, <u>id.</u> at Doc. No. 33. Herron provided a post-<u>Miranda</u> statement in which he claimed Brown had delivered the cocaine to him on behalf of Martin. <u>Id.</u> at ¶¶ 9, 12.

Brown did not plead guilty to the June 1, 2012 offense (Count Three) or the offenses related to the November 2, 2012 search and seizure (Counts Four, Five, Six). He pled guilty to conspiracy to possess with intent to distribute at least five (5) kilograms of cocaine in 2011 and 2012 (Count One), and four coconspirators, none of whom was Herron, attributed cocaine distribution amounts to Brown that exceeded five kilograms. PSR ¶¶ 7, 13-16, <u>Brown</u>, <u>id.</u> at Doc. No. 33 (sealed). Although he again refers to "tainted testimony," Brown continues to provide no explanation for that reference. Finally, Brown does not explain how his allegations of "tainted testimony" and false statements by one or more coconspirators relate to the evidence seized in the November 12, 2012 search of the Union County residence.

In sum, Brown has not demonstrated that proceeding to trial would have been objectively reasonable in light of all of the facts. <u>See</u> <u>Fugit</u>, 703 F.3d at 260; <u>see</u> <u>also</u> <u>Lee v. United States</u>, 137 S. Ct. at 1965 ("[W]hen the defendant's decision about going to trial turns on his prospects of success and those are affected by the attorney's error," the defendant must "show that he would have been better off going to trial" in order to demonstrate prejudice.) (citing <u>Premo v. Moore</u>, 562 U.S. 115, 118 (2011) (discussing allegation that lawyer should have but did not seek to suppress an improperly obtained confession); <u>Hill</u>, 474 U.S. at 59 (discussing failure to investigate potentially exculpatory evidence))). Therefore, he has failed to show he was prejudiced by Davis's advice, and this claim is denied.

Lastly, Brown alleges he told Davis to confer with the attorney who represented him in 2012 on the 2007 offense "because he (Brown) was told he would not be charged in relation to the 2012 conduct." (§ 2255 Mot. 16.) Brown does not explain how this allegation relates to the instant ineffective assistance of counsel claim. Nevertheless, the Court finds it is without merit.

The Court has reviewed the plea agreement in Case No. 5:13-cr-00024-RLV-1, and there is no provision in the agreement that Brown would not be subject to indictment or charged for his 2012 conduct. See Plea Agree., Brown, No. 5:13-cr-00024-RLV-1, Doc. No. 2. Moreover, according to his attorney in that matter, Alicia Brooks, an effort was made to work out a global plea to the 2007 charge and the charges related to the 2012 conduct, but Brown "was adamant he wasn't doing that," and it was "his full intent" to fight any 2012-related charges "if [the Government] ever decide[d]" to indict him on the 2012 conduct. Sent. Tr. at 24, id. at Doc. No. 15. In short, the record contradicts Brown's assertion that he was told he would not be charged in relation to the 2012 conduct.

### C. Ineffective Assistance of Counsel at Sentencing

Several of Brown's allegations against his sentencing attorney, Ms. Okwara, are similar to those he leveled against Davis. Specifically, Brown alleges Okwara failed to comply with his request that she consult with Ms. Brooks about the plea agreement in Case No. 5:13-cr-00024-RLV-1. He contends that had she done so, she would have learned "why there was no global plea" and that Brown had told Brooks about Martin paying an informant for information. (§ 2255 Mot. 18). That, along with discovery, Brown argues, would have given Okwara the ability to meet the Government's case and "present some kind of argument." (§ 2255 Mot. 18).

This claim is without merit for all the reasons stated in the previous two sections of this Order. See discussions, supra, at III A & B. Brown pled guilty and stipulated that there was a factual basis supporting his guilty plea. There was no global plea in his previous case because

Brown refused to consider one, see Sent. Tr. 24, Brown, No. 5:13-cr-00024-RLV-1, Doc. No. 15, and Brown does not indicate what kind of argument he expected Okwara to make that would have created a reasonable probability of a more lenient sentence. See Royal v. Trombone, 188 F.3d 239, 249 (4th Cir. 1999) (applying Strickland to ineffective assistance at sentencing claim, requiring a reasonable probability that "sentence would have been more lenient" absent counsel's errors). This claim is denied.

Brown also claims Okwara rendered ineffective assistance by failing to make any argument at sentencing that his 2012 offenses were related to his 2007 offense and that criminal history points therefore should not have been assigned for the 2007 offense. (§ 2255 Mot. 19). The sentencing guidelines establish that certain relevant conduct may be considered in determining the guidelines range for a criminal defendant. See generally U.S.S.G. Manual § 1B1.3 (U.S. Sentencing Comm'n 2014). "When a defendant has committed multiple offenses similar to the charged offense, all conduct that is 'part of the same course of conduct or common scheme or plan as the offense of conviction' constitutes relevant conduct." United States v. Hodge, 354 F.3d 305, 312-13 (4th Cir. 2004) (quoting U.S.S.G. § 1B1.3(a)(2)). No criminal history points are assigned to prior sentences for conduct that is "part of the instant offense." See U.S.S.G. Manual § 4A1.2(a)(1) (U.S. Sentencing Comm'n 2014). Conduct that is part of the instant offense means conduct that is relevant conduct to the instant offense under the provisions of § 1B1.3 (Relevant Conduct). See id. at § 4A1.2(a) cmt. n.1.

Had no criminal history points been assigned for the 2007 offense, Brown's total history score would have been 3 and his criminal history category would have been II. See PSR ¶¶ 43, 52-54, Brown, 3:14-cr-00147-RJC-1, Doc. No. 33 (sealed). Based upon a total offense level of 34 and a criminal history category of II, Brown's guideline range for imprisonment would have been 168-210 months imprisonment. See U.S.S.G. Manual ch. 5, pt. A, Sentencing Table.

However, because the statutorily mandated minimum sentence for Brown's drug conspiracy offense (240 months) was greater than the maximum applicable guideline range, Brown's guideline term of imprisonment would have remained 240 months.  See id. at §5G1.2(b) cmt. n.3.

Okwara argued in her Supplemental Objections to the PSR that Brown should not receive criminal history points for the 2007 offense.  See Suppl. Obj. to PSR ¶¶ 3-4, Brown, No. 3:14-cr-00147-RJC-1, Doc. No. 53.  In fact, part of Brown's claim (§ 2255 Mot. 19) appears to be lifted directly from Okwara's Supplemental Objections, see Suppl. Obj. to PSR ¶¶ 3-4, Brown, id.  Okwara withdrew this objection on the day of sentencing, see Sent. Tr. 4, id. at Doc. No. 70, and it is apparent from the sentencing transcript that she did so because she and the prosecutor had reached an agreement to recommend additional adjustments to Brown's offense level, brining it down to 29, and to jointly recommend a 120-month sentence.  Id. at Sent. Tr. 4, id.  The Court, in fact, imposed a 120-month sentence.  As such, Brown has failed to demonstrate he was prejudiced by Okwara's decision to abandon her objection to assignment of criminal history points for the 2007 offense.  See Royal, 188 F.3d at 249.

Finally, Brown claims Okwara rendered ineffective assistance by failing to argue at sentencing that the sentence imposed in the instant case should be reduced by the length of the sentence imposed for the 2007 offense because the offenses involved relevant conduct.  (§ 2255 Mot. 19).  At sentencing, Brown requested that the time he served on the 2007 offense be counted toward whatever sentence the Court intended to impose, and the Court rejected that request,

> I understand Mr. Brown to be asking me to run this time concurrent with the time that he received in his previous federal case, but I decline to do that.  I think this is subsequent, and very serious criminal conduct.  I think Mr. Brown received a very generous sentencing reduction from the sentencing judge in the previous case.  And

the 120 months imposed by this Court should run consecutive to all other terms of imprisonment.

Sent. Tr. 15, <u>Brown</u>, No. 3:14-cr-00147-RJC-1, Doc. No. 70.  Accordingly, Brown cannot demonstrate he was prejudiced by Okwara's alleged failure to make the same argument.  <u>See</u> <u>Royal</u>, 188 F.3d at 249.  His claims of ineffective assistance of counsel at sentencing are without merit and shall be denied.

**IT IS, THEREFORE, ORDERED** that:

1. Brown's Motion to Vacate, Set Aside or Correct Sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 1) is **DENIED with prejudice**;

2. Brown's Motion for Leave to File Supplemental Authority (Doc. No. 9) is **GRANTED**;

3. Brown's Motions to Ascertain Status of Motion to Vacate (Doc. Nos. 10, 12) are **DENIED** as moot; and

4. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts, this Court declines to issue a certificate of appealability.  <u>See</u> 28 U.S.C. § 2253(c)(2); <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 338 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong); <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000) (when relief is denied on procedural grounds, a petitioner must establish both that the dispositive procedural ruling is debatable and that the petition states a debatable claim of the denial of a constitutional right).

Signed: November 28, 2018

Robert J. Conrad, Jr.
United States District Judge